UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

ADAM SHIGWADJA,

        Petitioner,          Case No. 2:22-cv-76

v.          Honorable Jane M. Beckering

JAMES CORRIGAN,

        Respondent.
_____/

**OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. The Respondent has filed a motion to dismiss the petition as untimely (ECF No. 11) along with the state-court record (ECF Nos. 12-1–12-22), pursuant to Rule 5, Rules Governing § 2254 Cases. After reviewing Respondent's motion, Petitioner's response (ECF No. 15), and the state court record, the Court concludes that the petition is barred by the one-year statute of limitations. Accordingly, Respondent's motion to dismiss the petition as untimely will be granted.

**Discussion**

I.    **Factual Allegations**

Petitioner Adam Shigwadja is incarcerated with the Michigan Department of Corrections at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. On August 14, 2015, following a four-day bench trial in the Kalamazoo County Circuit Court, Petitioner was convicted of assault with intent to do great bodily harm (AGBH), in violation of Mich. Comp. Laws § 750.84, second-degree arson, in violation of Mich. Comp. Laws § 750.731, and first-degree home invasion, in violation of Mich. Comp. Laws § 750.110a. On September 14,

2015, the court sentenced Petitioner as a second habitual offender, Mich. Comp. Laws § 769.10, to concurrent prison terms of 6 years, 11 months to 15 years for AGBH and 14 years, 7 months to 30 years for arson, to be served consecutively to a sentence of 14 years, 7 months to 30 years for home invasion.

Petitioner, with the assistance of counsel, directly appealed his convictions and sentences to the Michigan Court of Appeals, raising several issues, but not the issues he presents by way of his amended petition. The court of appeals denied relief by an opinion issued January 19, 2017. Op., *People v. Shigwadja*, No. 329471 (Mich. Ct. App. Jan. 19, 2017), (ECF No. 12-17, PageID.1116–1123.) Petitioner then sought leave to appeal to the Michigan Supreme Court. That court denied his application on September 12, 2017. *People v. Shigwadja*, 900 N.W.2d 875 (Mich. 2017). It does not appear that Petitioner filed a petition for certiorari to the United States Supreme Court.

Petitioner, with the assistance of retained counsel, filed a motion for relief from judgment in the Kalamazoo County Circuit Court on April 27, 2018. Register of Actions, *People v. Shigwadja*, No. 2014-1371-FC (Kalamazoo Cnty. Cir. Ct.), (ECF No. 12-1, PageID.179.) The Kalamazoo County Circuit Court denied the motion on August 24, 2018. Order, *Shigwadja*, No. 2014-1371-FC (Kalamazoo Cnty. Cir. Ct. Aug. 24, 2018), (ECF No. 12-12, PageID.1065–1070.) Petitioner sought leave to appeal to the Michigan appellate courts. The court of appeals denied leave on June 26, 2019, Order, *People v. Shigwadja*, No. 347719 (Mich. Ct. App. June 26, 2019), (ECF No. 12-18, PageID.1343), and the Michigan Supreme Court denied leave on December 23, 2019, *People v. Shigwadja*, 936 N.W.2d 299 (Mich. 2019).

On June 18, 2020, Petitioner, with the assistance of new retained counsel, filed a second collateral attack on his convictions, (ECF Nos. 12-13 and 12-14), in the trial court. In Petitioner's motion he argued that he was entitled to a new trial because he lacked competency to be tried, Mich. Comp. Laws § 330.2204, and, therefore, the trial court lacked jurisdiction. (Pet'r's Mot. for New Trial, ECF No. 12-14, PageID.1106–1107.) The trial court denied Petitioner's second motion initially on July 28, 2020, Order, *Shigwadja,* No. 2014-1371-FC (Kalamazoo Cnty. Cir. Ct. Jul. 28, 2020), (ECF No. 12-16, PageID.1112–1115), and on reconsideration on January 8, 2021, Order, *Shigwadja*, No. 2014-1371-FC (Kalamazoo Cnty. Cir. Ct. Jan. 8, 2021), (ECF No. 6-3, PageID.62–64).

The trial court's reason for denying Petitioner's motion is critical to the analysis of the timeliness of his petition. The trial court denied Petitioner's motion because it was not his first collateral attack, and successive motions for relief from judgment are properly rejected unless the second motion is "based on a retroactive change in law that occurred after the first motion for relief from judgment or a claim of new evidence that was not discovered before the first such motion." Mich. Ct. R. 6.502(G).

Petitioner did not base his motion on a retroactive change in law or on new evidence. He maintained then, and maintains now, that he was not bound by the requirements of the successive motion rule because he did not file a motion for relief from judgment under Michigan Court Rules 6.501 *et seq*. Instead, he filed his motion under the statute that permits motions for new trial, Mich. Comp. Laws § 770.1. The trial court disagreed.

The trial court determined that all motions for new trial were governed by Michigan Court Rule 6.431, which states that if the defendant is no longer entitled to appeal by right or by leave,

3

which Petitioner was not, then the defendant may seek relief pursuant to the procedure set forth in subchapter 6.500 regarding motions for relief from judgment. Order, *Shigwadja*, No. 2014-1371-FC (Kalamazoo Cnty. Cir. Ct.), (ECF No. 12-16, PageID.1113.) Although the rule's statement is permissive, rather than mandatory—"defendant may seek relief," Mich. Ct. R. 6.431(A)(4)—the staff comment states: "under subrule (A)(4), a defendant who is not entitled to appeal by right or by leave . . . may ***only*** seek relief under the procedure provided by Subchapter 6.500." Mich. Ct. R. 6.431, Staff Comment to 1989 Adoption (emphasis supplied).[1] The Michigan Court of Appeals has interpreted the rule consistently with the Staff Comment. *See, e.g.*, *People v. Kincade*, 522 N.W.2d 880, 882 (Mich. Ct. App. 1994) (stating "Defendant's postappeal motions for a new trial . . . were reviewable only as motions for relief from judgment pursuant to MCR 6.501 et seq"); *People v. Watroba*, 483 N.W.2d 441, 442 (Mich. Ct. App. 1992) ("Subchapter 6.500 of the Michigan Court Rules establishes the procedures for pursuing postappeal relief from a criminal conviction. The subchapter is the exclusive means to challenge a conviction in Michigan once a defendant has exhausted the normal appellate process."). Thus, the permissive language of the rule appears to delineate a choice, not between pursuing relief under Subchapter 6.500 or some other provision affording relief, but between pursuing relief under Subchapter 6.500 or not pursuing relief at all.

---

[1] The Sixth Circuit Court of Appeals has concluded that "Staff Comments" to the Michigan Court Rules carry some persuasive force:

> Staff comments, true enough, are not binding and do not reflect a substantive determination by the Michigan Supreme Court itself. *Id*. But at the same time, the Michigan Supreme Court treats staff commentary as "persuasive in understanding the proper scope or interpretation of a rule or its terms." *See People v. Comer*, 500 Mich. 278, 901 N.W.2d 553, 563 n.48 (2017).

*Van Hoven v. Buckles & Buckles, P.L.C.*, 947 F.3d 889, 898 (6th Cir. 2020).

The trial court noted that Petitioner's argument in the motion regarding his supposed incompetency was unconvincing; but the court was very clear that the decision denying relief was based solely on Petitioner's failure to comply with the requirements of Michigan Court Rule 6.502(G). Order, *Shigwadja*, No. 2014-1371-FC (Kalamazoo Cnty. Cir. Ct.), (ECF No. 12-16, PageID.1114 (stating "this Court need not do a full analysis of Defendant's merits, as Defendant has yet to overcome the procedural bar set forth in MCR 6.502(G) and his Motion for New Trial is being denied under this theory alone").)

Petitioner sought leave to appeal to the Michigan appellate courts. The court of appeals denied leave on August 4, 2021. Order, *People v. Shigwadja*, No. 357626 (Mich. Ct. App. Aug. 5, 2021) (ECF No. 12-19, PageID.1424.) The court stated: "[r]egardless whether defendant's motion is treated as a motion for new trial under MCL 770.1 or a successive motion for judgment relief under MCR 6.502(G), defendant has failed to establish that the trial court erred in denying defendant the relief he requested." *Id*. The Michigan Supreme Court denied leave on March 8, 2022, stating "the application for leave to appeal the August 5, 2021, order of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court." *People v. Shigwadja*, 970 N.W.2d 332 (Mich. 2022) (capitalization in original).

On March 29, 2022,[2] Petitioner filed a motion to stay habeas proceedings. (ECF No. 1.) To preserve Petitioner's rights, the Court construed the motion as a habeas petition, but directed

---

[2] Under the "prison mailbox rule," a petition is considered filed when a habeas petitioner submits his petition to prison authorities for mailing to the court. *See, e.g., Cretacci v. Call*, 988 F.3d 860, 865 (6th Cir. 2021) (stating "[i]n *Houston v. Lack*, the Supreme Court held that notices of appeal from pro se prisoners are considered filed when the prisoner delivers the notice to prison authorities for mailing. 487 U.S. 266, 270 (1988). This is now known as the prison mailbox rule."). Petitioner

5

Petitioner to file an amended petition on the Court's approved form. (ECF No. 4.) Petitioner filed his amended petition on May 9, 2022. (ECF No. 6.) Respondent contends that Petitioner's initial filing was too late such that his claim should be dismissed as untimely. (ECF No. 11.)

## II.     Statute of Limitations

Respondent claims that Petitioner's application is barred by the one-year statute of limitations provided in 28 U.S.C. § 2244(d)(1), which became effective on April 24, 1996, as part of the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA). Section 2244(d)(1) provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of
>
> (A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

---

does not provide that date; however, he dates his signature March 29, 2022. He certainly could not have mailed the document before he signed it. The Court will construe the date of signing as the filing date. *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (holding that the date the prisoner signs the document is deemed under Sixth Circuit law to be the date of handing to officials) (citing *Goins v. Saunders*, 206 F. App'x 497, 498 n.1 (6th Cir. 2006)).

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

In most cases, § 2244(d)(1)(A) provides the operative date from which the one-year limitations period is measured. Under that provision, the one-year limitations period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Petitioner appealed the judgment of conviction to the Michigan Court of Appeals and the Michigan Supreme Court. The Michigan Supreme Court denied his application on September 12, 2017. Petitioner did not petition for certiorari to the United States Supreme Court. The one-year limitations period, however, did not begin to run until the ninety-day period in which Petitioner could have sought review in the United States Supreme Court had expired. *See Lawrence v. Florida*, 549 U.S. 327, 332–33 (2007); *Bronaugh v. Ohio*, 235 F.3d 280, 283 (6th Cir. 2000). The ninety-day period expired on December 11, 2017.

Petitioner had one year from December 11, 2017, until December 11, 2018, to file his habeas application. *See Moss v. Miniard*, 62 F.4th 1002, 1009–10 (6th Cir. 2023) (clarifying that "the limitations period would . . . end on the anniversary of the finality date") Petitioner filed his application on March 29, 2022. Obviously he filed more than one year after the period of limitations began to run. Thus, absent tolling, his application would be time-barred.

The running of the statute of limitations is tolled when "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2); *see also Duncan v. Walker*, 533 U.S. 167, 181–82 (2001) (limiting the tolling provision to only State, and not Federal, processes); *Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (defining "properly filed").

Petitioner filed his first application for collateral review on April 27, 2018. That application remained pending until the Michigan Supreme Court denied leave to appeal on December 23, 2019. Thus, the period of limitation ran from December 12, 2017, to April 27, 2018—137 days. The period of limitation commenced running again on December 24, 2019. Respondent claims it continued to run until it expired on August 8, 2020.[3] August 8, 2020, however, was a Saturday. Under Federal Rule of Civil Procedure 6, when a period of time stated in days (or a longer unit of time) ends on a Saturday, "the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." Fed. R. Civ. P. 6(a)(1)(C). Therefore, absent additional tolling, the last day Petitioner could have timely filed his habeas petition was Monday, August 10, 2020.

But Petitioner claims the running of the statute was tolled once again when he filed his second collateral attack on June 18, 2020. Respondent, on the other hand, contends that the second collateral attack was not properly filed and, thus, cannot operate to toll the running of the period of limitation.

The Supreme Court expounded upon the meaning of the phrase "properly filed" in *Artuz*:

> An application is "filed," as that term is commonly understood, when it is delivered to, and accepted by, the appropriate court officer for placement into the official record. *See, e.g.*, *United States v. Lombardo*, 241 U.S. 73, 76, 36 S.Ct. 508, 60 L.Ed. 897 (1916) ("A paper is filed when it is delivered to the proper official and by him received and filed"); Black's Law Dictionary 642 (7th ed.1999) (defining "file" as "[t]o deliver a legal document to the court clerk or record custodian for placement into the official record"). And an application is "properly filed" when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee. *See, e.g.*, *Habteselassie v. Novak*, 209 F.3d 1208, 1210–1211 (C.A.10 2000); 199 F.3d, at 121 (case below); *Villegas v. Johnson*, 184 F.3d 467,

---

[3] Respondent's calculation starts one day later than the Court's. *Moss v. Miniard* conclusively resolved the date on which the period of limitations began to run to be one day sooner than Respondent calculated. Nonetheless, the Court and Respondent end on the same date.

8

>469–470 (C.A.5 1999); *Lovasz v. Vaughn*, 134 F.3d 146, 148 (C.A.3 1998). In some jurisdictions the filing requirements also include, for example, preconditions imposed on particular abusive filers, *cf. Martin v. District of Columbia Court of Appeals*, 506 U.S. 1, 113 S.Ct. 397, 121 L.Ed.2d 305 (1992) (*per curiam*), or on all filers generally, cf. 28 U.S.C. § 2253(c) (1994 ed., Supp. IV) (conditioning the taking of an appeal on the issuance of a "certificate of appealability"). But in common usage, the question whether an application has been "properly filed" is quite separate from the question whether the claims contained in the application are meritorious and free of procedural bar.

*Artuz*, 531 U.S. at 8–9 (footnote omitted).

Respondent urges this Court to conclude that a second collateral attack that is ultimately denied because it fails to comply with the requirements of Rule 6.502(G) is not "properly filed." Petitioner does not necessarily disagree. Instead, he urges the Court to conclude that, because the Michigan Court of Appeals referenced Mich. Comp. Laws § 770.1 in the one-sentence order denying leave to appeal, that his motion was not decided on the procedural failure to comply with Rule 6.502(G); it was decided on the merits and, thus, the time it was pending tolls the running of the statute.

In *Williams v. Birkett*, 670 F.3d 729 (6th Cir. 2012), the Sixth Circuit reviewed the Supreme Court's guidance in *Artuz* and the subsequent application of *Artuz* in *Pace v. DiGuglielmo*, 544 U.S. 408 (2005), and concluded that a collateral attack denied on the grounds of Rule 6.502(G) is not properly filed. The *Williams* court's analysis is exhaustively thorough and leaves no room for any other conclusion. Though more than a decade has passed since that decision, it has not lost any vitality. The Sixth Circuit relied on *Williams* just weeks ago in *Kares v. Morrison*, __ F.4th __, 2023 WL 5093733, at *4 (6th Cir. Aug. 8, 2023). Based on *Williams*, the Court concludes that Petitioner's second collateral attack was not properly filed and did not toll the running of the period of limitation.

Petitioner seeks to avoid that result in two ways: first, by challenging whether Rule 6.502(G) is applicable to a motion for new trial; and second, by challenging whether the trial

9

court's reliance on Rule 6.502(G) to deny the motion survived Petitioner's application for leave to appeal to the Michigan Court of Appeals.

Petitioner's dogged insistence that Subchapter 6.500 of the Michigan Court Rules, including Rule 6.502(G), does not apply to motions for new trial filed after direct appeals have been exhausted has no support in the Michigan Court Rules or the cases applying the Rules. *See* Mich. Ct. R. 6.431(A)(4); *Kincade*, 522 N.W.2d at 882 (stating "Defendant's postappeal motions for a new trial . . . were reviewable only as motions for relief from judgment pursuant to MCR 6.501 et seq"); *Watroba*, 483 N.W.2d at 442 (stating "Subchapter 6.500 of the Michigan Court Rules establishes the procedures for pursuing postappeal relief from a criminal conviction. The subchapter is the exclusive means to challenge a conviction in Michigan once a defendant has exhausted the normal appellate process"). And the trial court could not have been clearer in stating that it was denying Petitioner's request based on Rule 6.502(G) and only Rule 6.502(G). *Shigwadja*, No. 2014-1371-FC (Kalamazoo Cnty. Cir. Ct.), (ECF No. 12-16, PageID.1114 (stating "this Court need not do a full analysis of Defendant's merits, as Defendant has yet to overcome the procedural bar set forth in MCR 6.502(G) and his Motion for New Trial is being denied under this theory alone")). Thus, the Court rejects Petitioner's first attempt to avoid the clear holding of *Williams*.

Petitioner's second attempt fares no better. The Michigan Court of Appeals, in denying Petitioner's application for leave to appeal, stated: "Regardless whether defendant's motion is treated as a motion for new trial under MCL 770.1 or a successive motion for judgment relief under MCR 6.502(G), defendant has failed to establish that the trial court erred in denying defendant the relief he requested." Order, *Shigwadja*, No. 357626 (Mich. Ct. App. Aug. 5, 2021), (ECF No. 12-19, PageID.1424.) Petitioner contends that this single sentence from the three-

10

sentence order denying leave to appeal converted the denial of his case from a purely procedural denial under Rule 6.502(G) to a substantive ruling on the merits of his incompetency claim. The Court concludes that the quoted language is simply too slender a reed to support the weight of Petitioner's argument.

In Petitioner's application for leave to appeal he argued that the trial court had "recharacterized" his motion for new trial as a motion for relief from judgment. (Pet'r's Appl. for Leave to Appeal, ECF No. 12-19, PageID.1426, 1433, 1442–1451; Pet'r's Reply, ECF No. 12-19, PageID.1522.) Against that backdrop, the sentence in the Michigan Court of Appeals' order upon which Petitioner relies appears to address that specific argument, i.e., no matter how you characterize the motion seeking relief—as a motion for new trial under Mich. Comp. Laws § 770.1 or a motion for relief from judgment under Subchapter 6.500 et seq., under Mich. Ct. R. 6.502(G)—the trial court got it right.

The alternative interpretation urged by Petitioner makes little sense. Petitioner would have the Court conclude that the court of appeals expressly relied upon a merits determination of the motion for new trial, when the trial court expressly declined to resolve the motion on the merits and expressly decided the motion on the procedural issue alone. If, in fact, the Michigan Court of Appeals reached the merits, the appellate court would have necessarily been compelled to reverse the trial court's determination that a procedural bar stood in the way.

The most Petitioner can say is that the sentence is ambiguous. Such ambiguity does not suffice to avoid the determination that the motion was not properly filed. Although decided in a different context, the Supreme Court faced a similar ambiguity in *Ylst v. Nunnemaker*, 501 U.S. 797 (1991). In *Ylst*, the Court decided how to determine whether a case was decided as a federal claim on the merits or on the ground of a state-law procedural default where the last order was

"unexplained"—meaning "an order whose text or accompanying opinion does not disclose the reason for the judgment . . . ." 501 U.S. at 802. The Court concluded that the federal habeas court should look through unexplained orders to the "last reasoned opinion." *Id*. at 803. "[W]here . . . the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard the bar and consider the merits." *Id*. The Sixth Circuit has applied *Ylst* to look beyond ambiguous orders. *Guilmette v. Howes*, 624 F.3d 286, 290–92 (6th Cir. 2010); *see also McQueen v. Winn*, No. 19-2212, 2021 WL 3079699, at *10 (6th Cir. Jul. 21, 2021) (deeming an ambiguous order to be unexplained "and subject to the look-through principle of *Ylst* and its progeny, *Wilson v. Sellers*, __ U.S. __, 138 S. Ct. 1188, 1195, 200 L. Ed. 2d 530 (2018)"). Therefore, to the extent that the court of appeals' order here is ambiguous, this Court deems it unexplained and looks through it to the last reasoned opinion, the opinion of the trial court, which clearly concludes that Petitioner's collateral attack was not properly filed.

As noted above, if Petitioner's motion for new trial did not toll the running of the period of limitation under the statute, the period of limitation expired on August 10, 2020. But the one-year limitations period is also subject to equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 645 (2010). A petitioner bears the burden of showing that he is entitled to equitable tolling. *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004). The Sixth Circuit repeatedly has cautioned that equitable tolling relief should be granted "sparingly." *See, e.g.*, *Ata v. Scutt*, 662 F.3d 736, 741 (6th Cir. 2011), *Solomon v. United States*, 467 F.3d 928, 933 (6th Cir. 2006); *Souter v. Jones*, 395 F.3d 577, 588 (6th Cir. 2005); *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). A petitioner seeking equitable tolling must show: "'(1) that he has been pursuing his rights diligently, and

(2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland*, 560 U.S. at 649 (citing *Pace*, 544 U.S. at 418).

Petitioner has failed to raise equitable tolling or allege any facts or circumstances that would warrant its application in this case. Nonetheless, the Sixth Circuit in *Williams* identified a possible reason to equitably toll the running of the statute in the present circumstances. Rule 6.502(G) contemplates two ways the trial court might communicate to the Petitioner that his request for relief is not properly filed under the rule: the court could "return without filing any successive motions for relief from judgment . . . [or t]he clerk [could] refer a successive motion that asserts one of [the] exceptions is applicable to the judge to whom the case is assigned for a determination whether the motion is within the exception." Mich. Ct. R. 6.502(G). In the first situation, the movant would learn of the improper filing promptly and could act accordingly; however, in the second situation, the movant might be lulled into a false sense that his period of limitation has stopped running by the fact that the motion was accepted for filing.

The petitioner in *Williams* argued that he fell into that second category and, thus, his motion should be considered properly filed. The *Williams* court rejected that argument concluding that Williams's circumstance "goes more to whether the statute should be equitably tolled than to whether the motion was 'properly filed.'" *Williams*, 670 F.3d at 735–36.

Given the clarity with which the Michigan courts had spoken with regard to available remedies for collateral attack upon exhausting direct appeals and the clear direction of Rule 6.431, it is inexplicable why Petitioner did not include a 6.502(G) exception as part of his successive collateral attack. Thus, it is not clear that equitable considerations warrant tolling here. Nonetheless, if tolling were warranted, it should not reasonably extend beyond July 28, 2020, when the trial court made clear that the motion was not "properly filed." Certainly, it could not extend

13

beyond January 8, 2021, when the trial court denied reconsideration.[4] Neither of those extensions would be long enough to render the petition timely.

Moreover, Petitioner was represented by counsel during virtually the entire time his second collateral attack was pending.[5] In *Holland*, a habeas case also concerning a missed one-year deadline, the Supreme Court considered whether an attorney's unprofessional conduct can count as an "extraordinary circumstance" justifying equitable tolling. The Supreme Court distinguished between a circumstance (1) where a client is represented by a negligent attorney, which, however the negligence is styled, is not an extraordinary circumstance warranting equitable tolling; and (2) where a client has been abandoned by his attorney, which would suffice to establish extraordinary circumstances beyond the petitioner's control. 560 U.S. at 651–52, 659.

There is nothing before the Court that suggests that counsel abandoned Petitioner at any stage of this process. It is apparent that counsel actively pursued Petitioner's second collateral attack until he passed away shortly before the Michigan Supreme Court issued the order denying Petitioner's application for leave to appeal. Counsel may have been negligent in disregarding the impact of the *Williams* decision on the running of the period of limitation, but he did not abandon

---

[4] And it is necessarily true that any period of equitable tolling could not extend to the date the Michigan Supreme Court denied Petitioner's application for leave to appeal because that would eviscerate the requirement that the collateral attack be properly filed, as it would match the time the attack was pending. In *Pace*, the Supreme Court considered the petitioner's argument that the period of limitation should be equitably tolled while an improperly filed collateral attack was pending in the state courts. *Pace*, 544 U.S. at 418. The Court rejected the argument concluding that the petitioner could not, under those circumstances, establish the necessary diligence. *Id.* at 418–19. This Court concludes that Petitioner could not establish diligent pursuit if he did not seek to protect himself after July 28, 2020, when the trial court informed him the motion was improperly filed.

[5] Petitioner's counsel passed away on February 13, 2022. (Pet., ECF No. 1, PageID.1–2; Feb. 14, 2022, Correspondence from Law Offices of David L. Moffitt & Associates, PLLC, ECF No. 1-1, PageID.6–7.)

Petitioner. Thus, even if counsel's failure could be characterized as negligence, the Court concludes that Petitioner has failed to demonstrate that equitable tolling renders his petition timely.

Finally, in *McQuiggin v. Perkins*, 569 U.S. 383 (2013), the Supreme Court held that a habeas petitioner who can show actual innocence under the rigorous standard of *Schlup v. Delo*, 513 U.S. 298 (1995), is excused from the procedural bar of the statute of limitations under the miscarriage-of-justice exception. In order to make a showing of actual innocence under *Schlup*, a Petitioner must present new evidence[6] showing that "it is more likely than not that no reasonable juror would have convicted [the petitioner.]" *McQuiggin*, 569 U.S. at 399 (quoting *Schlup*, 513 U.S. at 327) (addressing actual innocence as an exception to procedural default). Because actual innocence provides an exception to the statute of limitations rather than a basis for equitable tolling, a petitioner who can make a showing of actual innocence need not demonstrate reasonable diligence in bringing his claim, though a court may consider the timing of the claim in determining the credibility of the evidence of actual innocence. *Id.* at 399–400.

Furthermore, actual innocence means "factual innocence, not mere legal insufficiency." *Souter*, 395 F.3d at 590 (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)). A petitioner "must produce evidence of innocence so strong that the court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Allen*, 366 F.3d at 405 (internal quotation marks and citations omitted). Petitioner has made no such showing in this case.

---

[6] A showing of actual innocence must be based on "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. But the evidence Petitioner offers is not "new." All of the information he offers in support of his claim "would have been available to him at trial." *Connolly v. Howes*, 304 F. App'x 412, 418 (6th Cir. 2008).

In the instant case, Petitioner does not claim that he is actually innocent. Indeed, he acknowledges his participation in the events that resulted in his conviction. He simply claims that he had a different intent than the inculpatory intent found by the trial judge. Moreover, neither of Petitioner's habeas claims suggest that he is innocent. Petitioner's first habeas ground is a claim that counsel's ineffective assistance prevented Petitioner from accepting an offer to plead guilty to two counts with a minimum sentence exposure of 14 years. (Am. Pet., ECF No. 6, PageID.27–30.) Petitioner's second habeas ground claims that mental illness rendered him incompetent to stand trial. (*Id.*, PageID.31–33.) Petitioner does not claim that his mental illness was so severe that his actions are excused by the affirmative defense of insanity.

In short, Petitioner has failed to demonstrate that he can proceed with his untimely filing because he is actually innocent.

For all of these reasons, the Court concludes that Petitioner's habeas petition is untimely and Respondent's motion to dismiss on that ground will be granted.

### III.    Certificate of appealability

The Court must also determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.*

The Court has concluded that Petitioner's application is untimely and, thus, barred by the statute of limitations. Under *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), when a habeas petition is denied on procedural grounds, a certificate of appealability may issue only "when the prisoner shows, at least, [1] that jurists of reason would find it debatable whether the petition states a valid

claim of the denial of a constitutional right and [2] that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Both showings must be made to warrant the grant of a certificate. *Id*.

The Court finds that reasonable jurists could not find it debatable whether Petitioner's application was timely. Therefore, a certificate of appealability will be denied. Nonetheless, although the Court concludes that Petitioner is not entitled to a certificate of appealability, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Conclusion

Respondent's motion to dismiss will be granted. The habeas corpus petition will be denied because it is barred by the one-year statute of limitations. Moreover, a certificate of appealability will be denied.

Dated:   September 11, 2023              /s/ Jane M. Beckering
                                         Jane M. Beckering
                                         United States District Court Judge